IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN FRANCIS SKOLNY, | : Civ. No. 1:24-CV-889 |
| Plaintiff, | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security,[1] | : |
| Defendant. | : |

MEMORANDUM OPINION

I. Introduction

Stephen Skolny filed a Title II application for a period of disability and disability insurance benefits on November 13, 2019. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Skolny was not disabled from his alleged onset date of disability of October 1, 2008, through December 31, 2013, his date last insured.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Bisignano is substituted for then Acting Commissioner Leland Dudek as the defendant in this suit.

Skolny now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

On November 13, 2019, Skolny applied for disability insurance benefits, alleging disability due to alcohol dependence, paranoia, and cognitive impairments. (Tr. 76). Skolny was 56 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as a registered nurse. (Tr. 54-55).

With respect to his alleged impairments, the record contains only one medical notation during the alleged disability period. In August of 2013, Skolny was seen by Dr. Amandeep Bajwa, M.D., as a new patient. (Tr. 1122-23). Skolny reported doing well, and that he needed refills of

his medications. (Tr. 1122). Dr. Bajwa noted that Skolny's GERD was controlled on medication, and that he had not had a gout attack in five or six years. (*Id.*). A physical examination revealed that Skolny stood five feet seven inches and weighed 206 pounds, resulting in a BMI of 32.9. (Tr. 1123). The remainder of the examination was unremarkable. (*Id.*). Dr. Bajwa ordered refills of Skolny's GERD medication. (*Id.*).

The remainder of the evidence post-dates Skolny's date last insured.[2] Skolny continued to see Dr. Bajwa, and in February of 2014, Skolny reported compliance with his medications and that he was doing well. (Tr. 1118). He told Dr. Bajwa he was having trouble sleeping, and that he was fatigued during the day and took naps. (*Id.*). Skolny's physical examination was unremarkable, and Dr. Bajwa started him on a trial of Ambien for his sleep issues. (Tr. 1119). In August, Skolny reported experiencing some anxiety, and it was noted that his anxiety "seems to be secondary to a court case." (Tr. 1114). Several months later,

---

[2] While we have considered the entire record in this case, we do not recount the majority of Skolny's records that post-date his date last insured, December 31, 2013, as these records range from 2015 to 2022 and shed little, if any, insight on Skolny's alleged impairments during the alleged disability period between 2008 and 2013.

Skolny was seen for liver testing and reported he had seen a psychiatrist after he received a DUI. (Tr. 1112).

In November of 2014, Skolny was evaluated by Dr. George Woody, M.D., related to his DUI charges and his nursing license. (Tr. 721). Skolny identified his medical issues as gout, hypertension, GERD, and sinus problems. (Tr. 722). Dr. Woody's psychiatric examination findings revealed that Skolny frequently had to be redirected on topic, had little insight into his current situation, and exhibited no problems associated with substance intoxication or withdrawal. (Tr. 723). Dr. Woody assessed the following problems: alcohol dependence based upon his history of DUIs and elevated liver enzymes; cognitive impairment affecting his memory as reflected by the inconsistent history given by Skolny; and paranoid thoughts regarding his past DUIs. (Tr. 723-24).

It is against this factual backdrop that the ALJ conducted hearings in Skolny's case on March 15 and June 13, 2023. (Tr. 28-75). At the hearing on March 15, Skolny and the ALJ discussed his lack of representation, as well as efforts to obtain additional records regarding Skolny's impairments. (Tr. 28-36). At the hearing on June 13, held by a

different ALJ, Skolny discussed his impairments during the relevant period. (Tr. 37-75). He reported that he drank heavily, which he attributed to the stress of taking care of his sick parents. (Tr. 66-67). He stated that he had difficulty sleeping, as well as difficulties with concentration and memory. (Tr. 67-68). Skolny further reported issues getting along with others. (Tr. 69).

Following the second hearing, on September 20, 2023, the ALJ issued a decision denying Skolny's application for benefits. (Tr. 11-16). In that decision, the ALJ first concluded that Skolny met the insured status requirements through December 31, 2013. (Tr. 14). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Skolny suffered from medically determinable impairments of gastroesophageal reflux ("GERD"), gout, and obesity. (*Id.*). However, there was no evidence to indicate these impairments were severe during the relevant period. (*Id.*). The ALJ considered the one medical record from August of 2013, within the alleged disability period, and detailed that Skolny's impairments were controlled with medications, he

5

requested refills of his medications and a physical examination was within normal limits. (Tr. 16).

The ALJ also considered Skolny's testimony regarding his mental health impairments and concluded that they were not medically determinable impairments, as the diagnoses for these impairments occurred after Skolny's date last insured, and there were no medical records documenting these impairments during the relevant period. (Tr. 14-16). The ALJ further considered the opinions of the state agency consultants, who noted that there was insufficient evidence in the record during the alleged disability period but found depression, neurocognitive disorder, and alcohol dependence to be severe impairments. (Tr. 16). The ALJ reasoned that these findings were not persuasive because the evidence considered by these consultants was after the amended onset date, and the record did not contain evidence of these impairments through the date last insured. (*Id.*).

Having reached these conclusions, the ALJ declined to continue the sequential analysis, determined that Skolny had not met the demanding showing necessary to sustain this claim for benefits, and denied the

claim. (*Id.*). This appeal followed. (Doc. 1). On appeal, Skolny challenges the adequacy of the ALJ's decision arguing it is not supported by substantial evidence.[3] (Doc. 11). The appeal is fully briefed and ripe for resolution. (Docs. 11, 14). As discussed in greater detail below, having considered the arguments of the parties and having carefully reviewed the record, we conclude that the ALJ's decision should be affirmed.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court.

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552,

---

[3] We note that Skolny is proceeding in this appeal *pro se*, and as such, we read his filings as generally challenging the ALJ's findings that he was not disabled during the relevant time period.

565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak*

9

*v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work,

considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant

can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the

importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

    C. <u>Step 2 Analysis.</u>

At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). An impairment is considered severe if it

14

"significantly limits an individual's physical or mental abilities to do basic work activities," 20 C.F.R. 404.1520(c), or if it is "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'" *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted). This Step 2 inquiry is a de minimis screening device used to cast out meritless claims. *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). The claimant bears the burden to show that an impairment should be considered severe. *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

### D. This Case Will Be Affirmed.

As discussed above, to be eligible for disability benefits, Skolny must show that he was insured for disability benefits when he became disabled. 42 U.S.C. § 423(a)(1)(A). Skolny alleges his disability began on October 1, 2008, and his date last insured was December 31, 2013. Therefore, Skolny must show that he became disabled during that period.

Only a severe medical impairment can support a disability claim, and a medical impairment is only severe if it impinges upon the

claimant's ability to work. 42 U.S.C. § 423(d)(2)(A); *see also Heckler v. Campbell*, 461 U.S. 458, 459-60 (1983). A severe medical impairment must be shown by objective medical evidence. *See* 42 U.S.C § 423(d)(3); 20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 WL 1119029, at *2. The regulations further provide: "If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520(c).

In this case, we conclude that the ALJ's decision denying this claim at Step 2 is supported by substantial evidence. As we have discussed, the ALJ found that Skolny had medically determinable impairments of gout, GERD, and obesity. These impairments were documented in the August 2013 medical record from Dr. Bajwa, which the ALJ explicitly considered, which noted that Skolny was doing well, his GERD was controlled with medication, and that he had not had a gout flareup in five to six years. (Tr. 1122). The ALJ recounted that this was the only medical evidence pertaining to the plaintiff's physical impairments during the relevant

16

period. (Tr. 16). Given the unremarkable nature of this medical evidence, coupled with the fact that Skolny did not testify to any physical impairments, the ALJ found that these impairments were not severe. Accordingly, we find that this conclusion is supported by substantial evidence. *See Page v. Barnhart*, 108 F. App'x 735, 738 (3d Cir. 2004) (affirming the ALJ's Step 2 determination where the claimant "produced no medical evidence indicating that his [impairments] have more than a minimal impact" on his ability to function).

We reach a similar conclusion with respect to Skolny's alleged mental impairments. The ALJ considered Skolny's testimony that he drank heavily during the alleged period of disability, and that he had difficulty getting along with others. (Tr. 15). The ALJ also considered the state agency consulting opinions, which found insufficient evidence during the relevant period but found his impairments to be severe based on evidence outside of the alleged disability period. (Tr. 15-16). The ALJ determined that Skolny's mental health impairments were not medically determinable impairments because the diagnoses were made after the alleged disability period and based on evidence that post-dated the date

17

last insured. (Tr. 16). Indeed, the first record in the evidence documenting any mental health impairments is the November 2014 evaluation by Dr. Woody, which noted Skolny's alcohol dependence, cognitive issues, and paranoia, and post-dates the date last insured by almost one year. The ALJ considered this evidence, as well as Skolny's allegations that his impairments progressed from before the date last insured and found that this evidence did not support a conclusion that Skolny had a severe mental health impairment during the alleged disability period. (Tr. 15-16). Accordingly, we find that the ALJ's determination that Skolny did not have a severe mental health impairment is supported by substantial evidence.

In sum, the ALJ properly considered the medical opinion evidence, and properly concluded that the non-contemporaneous evidence was insufficient to show that Skolny was disabled during the period in question. We find no error with the decision. Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case, and the decision will be affirmed.

## IV. <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*<u>s/ Daryl F. Bloom</u>*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: May 21, 2025